## KOHLHASE, Appellant, v. WALLACE FARMERS' ELEVATOR COMPANY, Respondent.

### (148 N. W. 836.)

1. **Warehousemen—Charges—Non-bonded   Warehouse—Change   to Bonded Warehouse—Notice.**

   As to grain stored by plaintiff with defendant licensed but unbonded warehouseman, under Pol. Code, Sec. 494, and therefore not entitled to storage charges, it was a gratuitous depositary, whose duties, under Civ. Code, Sec. 1375, cease on its giving reasonable notice to owner to remove the article deposited; hence, if it afterwards becomes a bonded warehouseman, which Pol. Code, Sec. 498, requires to publish a schedule of rates for storage, which shall apply to all grain received, it cannot charge storage on such prior deposits from the time it becomes a bonded warehouseman, but only from the time he is notified that storage is being charged; and such publication the first week in September, 1910, pursuant to law, is not such notice.

2. **Same—Charges—Change to Bonded Warehouse—Imputed Notice.**

   As to grain stored by plaintiff with defendant after it became a bonded warehouseman, and after plaintiff had dealt with it as a mere licensed warehouseman, which could make no storage charges, he was charged with knowledge of such change as matter of law, and bound to know that charges, fixed and approved by board of railway commissioners, under Pol. Code, Sec. 498, and which must "in all cases be equal and just," and which "apply to all grain received into such warehouse from any person or source," violation of which provision is penalized by Sec. 502, were collectible.

(Opinion filed September 28, 1914.)

Appeal from Circuit Court, Codington County. Hon. CARL G. SHERWOOD, Judge.

Action by Conrad Kohlhase against the Wallace Farmers' Elevator Company, to recover for the value of grain stored in a warehouse. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed, and new trial granted.

*Sherin & Sherin,* for Appellant.

*Hanten & Hanten, Nick J. Steichen,* and *Perrett F. Gault,* for Respondent.

(1) Under point one of the opinion, Appellant cited:

Pol. Code, Sec. 485; Watkins v. Peck, 40 Am. Dec. 158; Lincoln v. Wright, 62 Am. Dec. 318; DeVoss v. City of Richmond, 98 Am. Dec. 651; Sec. 2452, Civ. Code.

GATES, J. In December, 1909, plaintiff hauled grain to defendant's elevator under an agreement, as claimed by him, that he "could store as much grain as he wanted to, as long as he wanted to," without charge for storage. This alleged agreement was substantially denied by the manager of the elevator. Plaintiff hauled other loads in 1910, so that on August 29, 1910, he had deposited in defendant's elevator nearly 500 bushels of velvet chaff wheat and something over 100 bushels of No. 1 wheat. Thereafter he continued to deposit grain in the elevator until he had therein, in November, 1911, 874 bushels and 11 pounds of velvet chaff wheat and 116 bushels and 2 pounds of No. 1 wheat. No storage tickets were delivered to plaintiff for these deposits, but 22 memorandum slips, showing the amount of each delivery, were given him. In November, 1911, plaintiff claims he made an agreement of sale to defendant, with defendant's manager, of all said grain at the then market price of 88 cents per bushel for the velvet chaff wheat and 93 cents for the No. 1 wheat, and plaintiff claims that he presented all of the 22 memorandum slips to the manager of the elevator at that time, and that the agreement was not consummated because a storage charge of 8 cents a bushel was made. Defendant's manager says that plaintiff only presented two of said memorandum slips, and said he wanted to sell the grain represented by those two slips, and when informed of the storage charge the matter of sale was dropped. Thereafter a conversation was had between the plaintiff and the defendant's board of directors, which amounted to a demand for the grain or its value. It is not claimed that plaintiff was personally notified that there was any charge for storage until after the grain was all delivered, but there was evidence tending to show, but denied by plaintiff, that he was given such notice in July, 1911. This action was begun to recover the value of all said grain at the price mentioned, aggregating $877.09. The action resulted in a verdict and judgment for defendant. From the judgment and order denying a new trial,

plaintiff has appealed.   The only question we find it important to review is the liability of the plaintiff to pay the storage charges.

Prior to the 1913 amendments to the Public Warehouse Law, there were two kinds of public warehouses, viz., those licensed without a bond, and bonded warehouses.   The operators of the former could purchase, receive, and handle grain, but could not store grain for compensation, and for the purposes of this opinion may be called licensed warehouses.   The operators of the latter, or bonded warehouses, were, in addition to the above powers, entitled to store grain for compensation.   By the provisions of sections 483 and 484, Pol. Code, neither kind of warehouse could be operated without a license.   By section 498, Pol. Code, the operators of bonded warehouses were required to publish a schedule of storage rates during the first week of September of each year, "and such published rates, or any published reduction of them, shall apply to all grain received into such warehouse from any person or source.   The charges for storage and handling shall in all cases be equal and just.  *   *   *"

Prior to August 29, 1910, defendant's warehouse was not a bonded warehouse, but it became such on that date, and so continued to the time of the trial of this action.   No storage charge was made or is claimed by defendant prior to that date.   On August 22, 1910, believing that its bond had been approved and filed, the manager of defendant made out two storage tickets for the grain of plaintiff then on hand.   Storage tickets, five in number, were made out for the grain thereafter delivered to the warehouse, but neither of said seven storage tickets was delivered to plaintiff, and all were left undetached in the book from which they were prepared.

[1-2] It is insisted by respondent that it is entitled, and under the law compelled, to charge storage upon all of plaintiff's grain since August 29, 1910.   It is claimed by appellant that, not having any notice until November, 1911, of the change of defendant's warehouse to a bonded warehouse, he is entitled to a return of his grain or its value without any storage charges.   We are of the opinion that both parties are in error.

Section 494, Pol. Code, provides:

"Whenever any grain shall be delivered to any person, association, firm or corporation doing a grain warehouse or grain ele-

vator business in this state, and receipts issued therefor, providing for a delivery of a like kind, amount and grade, to the holder thereof in return, such delivery shall be a bailment and not a sale of the grain so delivered. * * * "

It will be noticed that this section of the statutes applies to all warehousemen, whether bonded or not. We think, therefore, that the transactions between the parties prior to August 29, 1910, being bailments, amounted to a gratuitous deposit or deposits, within the meaning of section 1372, Civil Code. The facts as to the amount and kind of grain delivered are undisputed, and it is not claimed by either party that the deposits were to continue for any specified length of time. It is also undisputed that prior to August 29, 1910, the defendant could not have charged or received compensation for the deposits because its warehouse was not a bonded warehouse. We think, therefore, that it is immaterial whether or not any contract for deposit without compensation was made, or whether plaintiff was permitted to deposit the grain for such length of time as he desired, or in fact whether any contract was made between the parties.

Section 1379, C. C., provides:

"In the absence of an agreement as to the length of time during which a deposit is to continue, it may be terminated by the depositor at any time, and by the depositary upon reasonable notice."

Section 1375, C. C., also provides:

"The duties of a gratuitous depositary cease. * * * Upon his giving reasonable notice to the owner to remove it, and the owner failing to do so within a reasonable time."

It thus seems clear that, as to the grain deposited prior to August 29, 1910, plaintiff was entitled to a notice of the termination of the gratuitous deposits. It is not only required by statute, but fair dealing between man and man calls for it.

But, when the defendant became the operator of a bonded warehouse, it could not, as to grain thereafter received, make any discrimination between its patrons as to storage charges. Its charges are fixed and approved by the board of railroad commissioners, and must "in all cases be equal and just," and they "apply to all grain received into such warehouse from any person or source." A violation of these provisions is penalized by the pro-

visions of section 502, Pol. Code. We therefore hold, as to transactions had with defendant after August 29, 1910, that the plaintiff was bound to know that defendant was operating a bonded warehouse. He is charged with such knowledge as a matter of law. To hold otherwise would permit an evasion of the anti-discrimination features of the law. It is not contended that, under its lien for the storage charges upon the grain represented by any one storage ticket, the defendant could hold the grain represented by another storage ticket. And in view of section 2029, Civil Code, and section 488, Pol. Code, such contention could not be successfully maintained if made. And while by section 2153, Civil Code, there was a lien upon the grain subject to storage charges for its own particular charges, there was no lien whatever upon the grain delivered prior to August 29, 1910, until such time as storage charges could lawfully be made thereon.

The plaintiff was entitled to the return of the grain, or its value, deposited prior to August 29, 1910, without any charge for storage up to the time he was notified that storage was being charged, but the grain deposited after August 29, 1910, was subject to lawful storage charges. The notice published in September, 1910, pursuant to law would not, we think, amount to a notice to the defendant that he was to be charged with a storage fee upon the grain delivered before the warehouse became bonded, even if he had seen the notice. As to transactions had thereafter, the publication of the notice was not necessary in order to charge plaintiff with knowledge that the defendant was operating a bonded warehouse. Such was not the purpose of the notice. Therefore, the questions raised about that notice are, to our minds, unimportant.

The judgment and order appealed from are reversed, and a new trial is granted. Each party will be allowed to tax one-half of its costs in this court.